1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2       Including Professional Corporations
    RICHARD J. SIMMONS, Cal. Bar No. 72666
3   DANIEL J. McQUEEN, Cal. Bar No. 217498
    333 South Hope Street, 48th Floor
4   Los Angeles, California  90071-1448
    Telephone:     213-620-1780
5   Facsimile:     213-620-1398

6   Attorneys for Defendants CATHOLIC HEALTHCARE WEST
    and ST. MARY'S REGIONAL HEALTH CENTER
7

8

                    UNITED STATES DISTRICT COURT
9
                          DISTRICT OF NEVADA
10

11  MICHELLE WUEST, on behalf of herself and   )   Case No.:  3:11-CV-0855-LRH-VPC
    all others similarly situated,              )
12                                              )   **DEFENDANTS' REPLY**
                                                )   **MEMORANDUM OF POINTS AND**
                        Plaintiff,              )   **AUTHORITIES IN SUPPORT OF ITS**
13                                              )   **MOTION TO DISMISS PURSUANT TO**
            v.                                  )   **F.R.C.P. 12(b)(6) (ORAL ARGUMENT**
14                                              )   **NOT REQUESTED)**
                                                )
15  CATHOLIC HEALTHCARE WEST, a                 )
    California corporation; ST. MARY'S          )
16  REGIONAL HEALTH CARE CENTER, an             )
    unknown Nevada entity; and DOES 1-50        )
17  Inclusive,                                  )
                                                )
18                      Defendants.             )
                                                )
19  _____   )

20

21

22          TO PLAINTIFF AND HER ATTORNEY OF RECORD:

23

24

25

26

27

28

─────────────────────────────────────────────────
W02-WEST:1DJM1\404860063.1                    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO
                                                                    DISMISS

1

## I.  INTRODUCTION

2        Plaintiff offers this Court no compelling or persuasive reason to reject Defendant's motion

3 to dismiss certain of Plaintiff's claims.  As such, Defendant's motion should be granted.

4

5 ## II.  ARGUMENT AND AUTHORITIES

6 **A.        Plaintiff's Opt-Out And Opt-In Wage Claims Are Incompatible; Plaintiff Offers No**

7 **Persuasive Rationale To Oppose This Conclusion**

8        Defendants argued in their opening brief that simultaneously proceeding with "opt-in"

9 FLSA and "opt-out" Nevada law wage claims creates an impermissible conflict and, as such,

10 Plaintiff's state law claims should be dismissed.  Defendants supported their argument by citing to

11 no less than three, on-point Nevada District Court opinions:  (1) Busk v. Integrity Staffing

12 Solutions, Inc., 2011 U.S. Dist. LEXIS 79773 at *6-7 (D. Nev. 2011); (2) Williams v. Trendwest

13 Resorts, Inc., 2007 U.S. Dist. LEXIS 62396 at *8-9 (D. Nev. 2007); and (3) Fetrow-Fix v.

14 Harrah's Entertainment, Inc., 2010 U.S. Dist. LEXIS 125625 at *10-11 (D. Nev. 2010).  Each of

15 these authorities concluded that opt-in FLSA and opt-out Nevada law claims cannot appropriately

16 proceed together in federal court and, thus, dismissed the duplicative state law claims.

17        In opposition, Plaintiff notes – when presented with the same question – that courts in

18 other districts have decided the issue differently.  However, Plaintiff never adequately explains

19 why Busk, Williams and Fetrow-Fix are flawed.  To be sure, Plaintiff believes that the reasoning

20 adopted by Nevada's District Court judges "has been so overwhelmingly rejected by the vast

21 majority of courts to consider the issue that it is borderline frivolous."  Opp. at 2:18-19.  Plaintiff

22 likewise contends that if this issue had been raised in California (where the case is **not** pending)

23 that Defendants would have been "laughed out of court."  Opp. at 3:24-25.  However, as

24 thoroughly explained in the moving papers, Busk, Williams and Fetrow-Fix offer several

25 compelling reasons for why duplicative FLSA and state law claims should not proceed

26 simultaneously in federal court.  Defendants respectfully submit that this collection of persuasive

27 authorities from the Nevada District should be followed in this Nevada District matter.

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS

1    Moreover, as noted in the moving papers, the Ninth Circuit has yet to rule on the issue.

2  *See* Pitts v. Terrible Herbst, Inc., 653 F. 3d 1081, 1093 (9th Cir. 2011) ("the district court…

3  dismissed Count 2 of the complaint because, in its view, a Rule 23 class action could not co-exist

4  with a related collective action under the FLSA…   **[W]e need not address this issue** because Pitts

5  has told us – as he told the district court – that he will not pursue his FLSA claims.")  (Emphasis

6  added.)  Plaintiff argues that in Pitts, the Ninth Circuit somehow "recognized the primacy" of

7  Ervin v. OS Rest. Servs., 632 F. 3d 971 (7th Cir. 2011), a decision from the Seventh Circuit which

8  supports her argument.  This is untrue.  In a one-sentence footnote, Pitts merely noted that Ervin

9  was the only Circuit Court to address "this issue."  Pitts, 653 F. 3d at 1096, fn 6.  The Ninth

10  Circuit did **not** in any manner indicate that it adopted Ervin's conclusion.

11    Plaintiff also cites to Wang v. Chinese Daily News, 623 F.3d 743 (9th Cir. 2010), because –

12  without **any** discussion whatsoever of the procedural incompatibility of opt-in and opt-out wage

13  claims – the Ninth Circuit affirmed a district court's judgment in favor of a class of employees

14  with both types of claims.  Given that Wang did not even discuss the issue in question, it is hardly

15  persuasive.  Moreover, as Plaintiff notes, Wang has been *vacated* and remanded by the Supreme

16  Court.  *See* Wang v. Chinese Daily News, 132 S. Ct. 74 (2011).  Thus, it should no longer be

17  cited.  Accordingly, the Ninth Circuit has not yet ruled on whether opt-out and opt-in wage claims

18  may proceed simultaneously in federal court.  As such, this Court is free to follow already existing

19  Nevada District authority and, thereby, grant this motion to dismiss Plaintiff's "on-call minimum

20  wage," "on-call overtime" and "regular rate" claims under state-law.[1]

21

22  **B.    Plaintiff's "8/80 Plan" Claim Fails Because Of A Specific Statutory Exception**

23    Plaintiff concedes that her employment is covered by a "collective bargaining agreement[]

24  which provide[s] otherwise for overtime."  As such, she plainly falls under NRS § 608.018(3)(e)

25

26  ---

[1]    Plaintiff asserts that it is a "canard that this Court can dismiss state-law claims at the pleading
27  stage" due to a conflict in opting mechanisms.  Opp. at 2:20-21.  Plaintiff's position is obviously
incorrect.  Numerous courts have dismissed such claims for this very reason, including Busk,
28  Williams and Fetrow-Fix from this district.

and Nevada's generally applicable overtime requirements "do not apply."  As anticipated, Plaintiff

argues that Nevada's statutory overtime exception for union employees is preempted because it is

allegedly "discriminates" against union membership.  Opp. at 9:16-17.  Plaintiff is incorrect.

As explained in the moving papers, NRS § 608.018(3)(e) does not discriminate against

union employees because the statute ensures that **both** union and nonunion employees receive

overtime.  Union employees receive overtime under the terms of their collective bargaining

agreement ("CBA"); whereas non-union employees receive overtime pursuant to Nevada's

overtime statute.  As the Supreme Court has *already* determined, impermissible discrimination in

the union context does **not** exist where both union and non-union employees receive a form of the

benefit in question.  *See* <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 20-21 (1987)

(discrimination argument is rejected because the statute in question provided severance benefits to

both "union and nonunion workers alike.")

Notably, in <u>Firestone v. Southern Cal. Gas Co.</u>, 219 F.3d 1063, 1067 (9th Cir. 2000), the

Ninth Circuit likewise rejected a discrimination challenge to a comparable California state law

concerning overtime for union employees on grounds that the statute allegedly "denies union

employee benefits extended to non-union employees."  As the Ninth Circuit explained:

> the exemption from California's mandatory time-and-a-half overtime requirement
> is limited to those employees covered by collective bargaining agreements
> containing negotiated premium wage rates that are over and above regular wage
> rates in excess of the minimum wage.  The exemption therefore applies only to
> those who have sought and received alternative wage protections through the
> collective bargaining process.  The California statute as a whole thus "provides
> protections to individual union and nonunion workers alike, and thus neither
> encourages nor discourages the collective-bargaining processes that are the
> subject of the NLRA."

<u>Id.</u>, *citing to* <u>Fort Halifax</u>, 482 U.S. at 20-21.  219 17 F. 3d at 1223.  This reasoning applies

directly to the statute at hand and demonstrates that Plaintiff's union discrimination argument lacks

merit.  *See also* <u>Wylie v. Foss Maritime Co.</u>, 2008 U.S. Dist. LEXIS 76607 (N.D. Cal. 2008)

(California's union overtime exemption is again upheld against a discrimination challenge.)

W02-WEST:1DJM1\404860063.1

1    Plaintiff argues that authorities discussing California's analogous overtime exemption for

2    union employees are not persuasive because – according to her – Nevada's overtime exemption

3    could *theoretically* apply even where the CBA in question provided "only a ***penny more*** per hour

4    for overtime hours."  Opp. at 10:27-28.  (Emphasis in original.)  Such a theoretical rate, Plaintiff

5    contends, would not constitute a "legitimate minimum labor standard" that should survive review

6    under a union discrimination analysis.  Opp. at 11:2-5.  The Court need not consider this

7    theoretical argument because it has absolutely no relationship to the facts at hand.  Plaintiff's CBA

8    provides for far more than "pennies" an hour when overtime is worked.  Indeed, it mandates that

9    employees receive "overtime at the rate of one and one half (1 ½) times their regular rate of pay."

10   *See* Defendant's RFJN at p. 12.[2]  As such, Plaintiff's argument is inapposite and this Court should

11   grant Defendant's motion to dismiss Plaintiff's "8/80 plan" claim under Nevada law.

12

13   **C.**   **Plaintiff's "8/80 Plan" Claim Fails Because Nevada's Overtime Statute Is Preempted**

14         **By The FLSA To The Extent It Forbids The Use Of An 8/80 Plan In Hospitals**

15   In response to Defendant's preemption argument regarding Plaintiff's 8/80 plan claim,

16   Plaintiff argues that the FLSA "does ***not*** preempt any state law concerning wages."  Opp. at 7:24-

17   25.  (Emphasis in original.)  By this assertion, Plaintiff misconstrues the law.  As Plaintiff notes,

18   the FLSA explicitly permits a state to enact its own wage and hour standards.  *See* 29 U.S.C.

19   § 218(a).  However, to the extent the FLSA imposes a standard that is *more* protective of

20   employees, it preempts the conflicting, *less* protective state law.  Id.  Thus, federal "conflict

21   preemption" is certainly possible in this context.  *See*, *e.g.*, Pacific Merchant Shipping Assoc. v.

22   Aubry, 918 F. 2d 1409, 1423 (9th Cir. 1990) (discussing FLSA conflict preemption standards).

23   Here, Nevada's generally applicable overtime rules are preempted by the FLSA's 8/80

24   provisions for hospitals because they provide more protection for the employees in question.  As

25   explained in the moving papers, under an 8/80 plan, hospital employees earn overtime **every**

26   _____

27   [2]   Plaintiff does not oppose judicial notice of her CBA.  As noted in the moving papers, this Court
         may properly notice the terms of a CBA and, thus, consider them on a motion to dismiss.  *See*, *e.g.*,
28       Greenly v. Sara Lee Corp., 2006 U.S. Dist. LEXIS 90868 at * 8 (E.D. Cal. 2006).

**single day** after eight hours of work, rather than merely once per week.  In response to this argument, Plaintiff says "big deal" and notes that – under Nevada law – employees can also earn daily overtime after eight hours pursuant to NRS § 608.018(1).  What Plaintiff fails to note, however, is that Nevada's daily overtime statute *only* applies where the employee in question earns "less than 1 ½ times the minimum" wage – or less than $10.875 per hour.  There is no allegation in the complaint that Plaintiff – as a unionized medical services provider – works at such a low rate.  Thus, Plaintiff's argument in this respect is without support.

Plaintiff also deliberately misconstrues Defendant's statement about the ability of employees to earn overtime "again after 80 hours in a two-week period" under an 8/80 plan.  As Plaintiff notes, due to the FLSA's "anti-pyramiding" rules, employees cannot earn overtime twice for the same work by double-counting the same hours as both daily and weekly overtime.  *See* 29 C.F.R. § 778.601(d).  However, as Defendant correctly stated in its moving papers, employees working under an 8/80 plan do have the "*opportunity* to earn overtime every single day after eight hours and again after 80 hours in a two-week period" – so long as none of those hours are double-counted.  Thus, Defendant was perfectly correct to argue that an 8/80 plan is more beneficial to employees because they have greater *opportunities* to earn overtime as compared to the generally applicable rule where an employee may only potentially earn overtime *once* per week – *i.e.*, after 40 hours of work.  Accordingly, the FLSA's 8/80 provisions are more beneficial to hospital employees and, thus, preempt application of Nevada's generally applicable overtime standard.  This being the case, Plaintiff's 8/80 cause of action should be dismissed.

**D.      As A *Current* Employee, Plaintiff Cannot Sue For Waiting Time Penalties That Are Only Available For *Former* Employees**

As a matter of law, in order to have standing on a particular claim, the "named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class in which they belong and which they purport to represent."  <u>Pence v. Andrus</u>, 586 F.2d 733, 736-737 (9th Cir. 1978); *see also* <u>Lierboe v.</u>

1   State Farm Mutual Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003).  Nonetheless, Plaintiff

2   asserts that, as a *current* employee, she somehow has standing to sue for waiting time penalties

3   that are – by definition – only available for *former* employees.

4       In support of her argument, Plaintiff cites to Armstrong v. Davis, 275 F.3d 849 (9th Cir.

5   2001).  This authority actually supports Defendant's position.  In Armstrong, the Ninth Circuit

6   held that a putative class representative has standing to seek prospective relief on behalf of herself

7   and others where:  (1) she has *already* suffered "actual injury" due to the purported violation; and

8   (2) she can "demonstrate that she is realistically threatened by a *repetition* of the violation."  Id. at

9   860-861.  (Emphasis in original.)  Thus, as even Plaintiff concedes, standing based on prospective

10  injury does not exist unless a *prior* injury to the plaintiff is likely to "*recur*."  Opp. at 12:16-19.

11  Here, Plaintiff has never been terminated by Defendant.  *See* FAC at ¶ 4.  Thus, she has never

12  been owed waiting time penalties.  Because there has been no prior legal violation, let alone a

13  threatened recurrence of the same, Plaintiff lacks standing to sue for waiting time penalties.

14      In fact, in Pulido v. Coca-Cola Enterprises, Inc., 2006 WL 1699328 (C.D. Cal. 2006), the

15  court decided this very issue and granted the defendant's motion to dismiss a claim for violation of

16  California's waiting time penalty statute for terminated employees; *i.e.*, California Labor Code

17  sections 201-203.  In Pulido, the plaintiffs filed a wage and hour class action alleging various meal

18  and rest period violations.  The complaint included a cause of action for "failure to timely pay

19  wages upon termination, discharge and/or severance from employment."  The Court dismissed the

20  cause of action because the named plaintiffs were still employed by the defendant and, therefore,

21  could not properly allege a violation for themselves or for members of the proposed class.  As the

22  Court held:  "That this case has been filed as a class action is of no import.  *See* Pence v. Andrus,

23  586 F.2d 733, 737 (9th Cir. 1978) [parenthetical quotation omitted.]  Accordingly, the named

24  Plaintiffs, on the face of their Complaint, have not properly alleged violations of sections 201 and

25  202, and they are not entitled to damages under section 203."  Id. at *3.  As such, a dismissal of

26  Plaintiff's waiting time penalties claim under Nevada law is appropriate.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court grant its motion to dismiss Plaintiff's "on-call minimum wage," "on-call overtime" and "regular rate" claims under Nevada law; her fourth cause of action under Nevada law for use of an 8/80 plan; and her claim for waiting time penalties under NRS §§ 608.040 and 608.050.

Dated:  March 19, 2012

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/ Daniel J. McQueen_____

RICHARD J. SIMMONS
DANIEL J. McQUEEN

Attorneys for Defendants
CATHOLIC HEALTHCARE WEST and ST.
MARY'S REGIONAL HEALTH CARE CENTER

-7-

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS