UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHELLE WUEST, on behalf of herself and other persons similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>CALIFORNIA HEALTHCARE WEST, a California corporation; ST. MARY'S REGIONAL HEALTH CENTER, an unknown Nevada entity; and DOES 1-50 Inclusive<br><br>    Defendants. | 3:11-CV-00855-LRH-VPC<br><br><br>ORDER |

Before the court is Defendants' Motion to Dismiss the First Amended Complaint (#33[1]). Plaintiff filed an opposition (#38), to which Defendants replied (#39).

**I.  Facts and Procedural History**

This is a putative class action brought by an employee of St. Mary's Regional Health Center ("St. Mary's") involving allegations of unlawful activities in the payment and calculation of wages and overtime. Plaintiff is a "Surgical Tech" employed by St. Mary's. The defendants are St. Mary's itself and St. Mary's corporate parent, California Healthcare West ("CHW").

///

---

[1]Refers to the court's docket entry number.

In the First Amended Complaint, Plaintiff alleges four causes of action for violations of the Fair Labor Standards Act ("FLSA") and Nevada minimum-wage, overtime, and waiting-time statutes. First, Plaintiff alleges that she was paid less than minimum wage for stand-by and on-call time (the "minimum-wage claim"). Second, Plaintiff alleges that she was not paid the proper overtime premium for stand-by and on-call hours (the "overtime claim"). Third, Plaintiff alleges that the overtime premium rate was calculated incorrectly to her detriment (the "calculation claim"). And fourth, Plaintiff alleges that Defendants' overtime compensation scheme is insufficient to satisfy Nevada law (the "8/80 claim"). Plaintiff also requests waiting-time penalties (Nevada statutory penalties for making former employees wait too long for their due wages) for employees separated from Defendants' employ within the last three years.

Defendants now move to dismiss in part the First Amended Complaint for failure to state a claim under Rule 12(b)(6).

**II.    Legal Standard**

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

### III. Discussion

#### A. The minimum-wage, overtime, and calculation claims

Defendants object to Plaintiff's minimum-wage, overtime, and calculation claims based on a "fundamental" conflict between two ways of creating a class. (Defendants' Motion to Dismiss (#33) p. 3:16.) One way of creating a class is to use an "opt-out" mechanism: the court excludes potential class members if they request exclusion. This is the method adopted under Rule 23 of the Federal Rules of Civil Procedure.[2] Another way of creating a class is to use an "opt-in" mechanism: each potential class member must affirmatively request to join the class. This is the method adopted by § 216(b) of the FLSA.[3]

Here, Plaintiff invokes both the opt-out method and the opt-in method based on the same

---

[2] "[T]he court will exclude from the class any member who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v).

[3] "No employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brough." 219 U.S.C. § 216(b).

3

operative facts. Plaintiff's use of the opt-in method stems from her claims under the FLSA, and Plaintiff's use of the opt-out method stems from state law claims reached through the operation of Rule 23.[4] However, as the governing state law largely mimics the standards set forth in the FLSA, the operative facts giving rise to both the FLSA claims and the state law claims are effectively identical. *Compare, for example*, 29 U.S.C. § 207 (defining the overtime wage rate at 1.5 times the employee's regular rate) *with* N.R.S. § 608.018 (same). Defendants contend that Plaintiff's use of both class-creation methods creates potential procedural conflicts and runs contrary to Congress's intent in enacting § 216(b). Therefore, Defendants conclude, Plaintiff's state law claims must be dismissed.

The court disagrees. First, the procedural dangers that Defendants warn of are not present here. Defendants hypothesize a scenario in which there are more individuals in the Rule 23 class than in the FLSA class, in which case "[t]he court might then be in a position in which declining supplemental jurisdiction would be appropriate, given that the state law claims could be said substantatially to predominate over the federal claims." *Williams v. Trendwest Resorts, Inc.*, 2007 WL 2429149 *3 (D. Nev. 2007) (*quoting Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 469-70 (N.D. Cal. 2004). But Plaintiff's state law claims–and consequently the potential Rule 23 class–are not before this court pursuant to an exercise of supplemental federal jurisdiction. *See* 28 U.S.C. § 1367. Rather, these claims are before the court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The procedural difficulties envisioned by Defendants are not implicated by this sort of jurisdiction. *See also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 261 (3d Cir. 2012) ("[I]ndependent jurisidction exists over plaintiffs' claims under CAFA, which provides no statutory basis for declining jurisidiction in this instance.").

Second, Defendants argue that allowing both opt-in and opt-out claims frustrates Congress's intent. For example, Defendants suggest that:

///

---

[4] Federal jurisdiction is appropriate for these claims under 28 U.S.C. § 1332(d).

4

> [i]t is clear that Congress labored to create an opt-in scheme when it created Section 216(b) [of the FLSA] specifically to alleviate the fear that absent individuals would have their rights litigated without their input or knowledge. To allow a Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.

*Williams*, 2007 WL 2429149 at *4 (*quoting Otto v. Pocono Health System*, 457 F. Supp. 2d 522, 523-24 (M.D. Penn. 2006)). In *Knepper*, the Third Circuit thoroughly debunked this worry. Undertaking a detailed review of the FLSA's legislative history, the *Knepper* court demonstrated that § 216(b) was enacted in 1947 against a background of two exotic (to the modern jurisprudential mind) procedural mechanisms. The first such mechanism was the availability of "representative actions," in which a plaintiff who did not himself have a claim–like a union official–filed a class action on behalf of aggrieved employees.[5] 675 F.3d at 255-56. The second mechanism was a procedure called "one-way" intervention, in which class members could join a class after judgment had been reached. This permitted plaintiffs to "sit out an action, choosing to opt in and be bound by the judgment only after a favorable outcome." *Id*. at 255. The opt-in strategy was a way to curtail litigation by union officials as well as to force potential class members to join the class earlier rather than later. *Id*. at 260. Consequently, the FLSA's opt-in method of class creation is not a counterpoint to Rule 23's opt-out method–nor could it be, since opt-out actions did not exist at the time. *Id*. Therefore, the presence of opt-out claims along with opt-in claims does not frustrate congressional intent.[6]

///

---

[5] This meaning of "representative" is distinct from the meaning of "representative" as applied to modern class actions. In a modern class action, the plaintiff must be a member of the class. In the "representative actions" preceding the enactment of § 216(b), the plaintiff could be a third party without an interest in the litigation. *Knepper*, 675 F.3d at 260 n.15.

[6] The Third Circuit catalogued other reasons to reject the congressional-intent argument. The plain text of § 216(b) is unambiguous; the FLSA's savings clause–establishing Congress's intent not to preempt state law–indicates a contrary intent; and the jurisdictional provisions of CAFA suggest that courts should entertain opt-in and opt-out claims simultaneously. *Knepper*, 675 F.3d at 259-61.

Finally, Defendants suggest that the weight of authority falls on the side of dismissal. Though cases in this District have gone both ways,[7] the cases resulting in dismissal are distinguishable. In *Williams v. Trendwest Resorts*, for instance, the court considered a California statute that did not create independent substantive rights but rather "borrowed" those of the FLSA. 2007 WL 2429149 at *2. Here, in contrast, the Nevada statutes at issue create independent substantive rights (though those rights happen to be similar to those created by the FLSA). In both *Fetrow-Fix v. Harrah's Entertainment* and *Busk v. Integrity Staffing Solutions*, the court treated the conflict between opt-out and opt-in mechanisms as a preemption problem. 2010 WL 4774255 at *3; 2011 WL 2971265 at *3. However, the opt-out and opt-in mechanisms are both creatures of federal law (Rule 23 and § 216, respectively). "Because federal law cannot preempt another federal law," the preemption analysis is inapposite. *Knepper*, 675 F.3d at 263; *see also Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 760 (9th Cir. 2010) (*vacated on other grounds*, 132 S. Ct. 74 (2011)) (rejecting a preemption challenge and approving the exercise of supplemental jurisdiction over opt-out claims). Furthermore, this decision follows the reasoning of most courts of appeals to have directly considered this issue.[8] Therefore, Defendants' motion to dismiss the state law component of Plaintiff's minimum-wage, overtime, and calculation claims is denied.

**B. The 8/80 claim**

Plaintiff's 8/80 claim alleges that Defendants' overtime payment scheme violates Nevada law. In particular, Nevada law requires payment of overtime wages for all hours worked in excess of forty per

---

[7] *Compare Daprizio v. Harrah's Las Vegas, Inc.*, 2010 WL 5099666 (D. Nev. 2010) (denying motion to dismiss) *with Williams* (granting motion to dismiss), *Fetrow-Fix v. Harrah's Entertainment*, 2010 WL 4774255 (D. Nev. 2010) (same), and *Busk v. Integrity Staffing Solutions, Inc.*, 2011 WL 2971265 (D. Nev. 2011) (same).

[8] In addition to the Third Circuit in *Knepper*, the D.C. Circuit (*Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 424 (2006)), the Seventh Circuit (*Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971 (2011)), and the Second Circuit (*Shahriar v. Smith & Wolensky Restaurant Group, Inc.*, 659 F.3d 234 (2011)) have allowed simultaneous opt-in and opt-out claims. The Fourth Circuit, in contrast, has embraced a preemption analysis of Rule 23 opt-out claims. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193-94 (4th Cir.2007).

week. See N.R.S. § 608.018(2). Defendants' overtime payment scheme requires payment of overtime wages when an employee works more than eight hours in a day or more than eighty hours in a two-week pay period (called the "8/80 option"). The 8/80 option may be inconsistent with Nevada law where, for example, an employee works six eight-hour days during week one and four eight-hour days during week two. In this case, the employee is eligible for overtime under § 608.018 but not under the 8/80 option. Additionally, Nevada law provides that § 608.018(2) does not apply to employees who are covered by a collective bargaining agreement ("CBA") that "provide[s] otherwise for overtime." N.R.S. § 608.018(3)(e).

Defendants object to Plaintiff's 8/80 claim on the ground that § 608.018(2) is inapplicable because Plaintiff is covered by a CBA that "provides otherwise" for overtime.[9] Plaintiff is covered by a CBA that addresses overtime in the form of the 8/80 option. (*See* CBA Between St. Mary's and AFL-CIO (#34) §§ 1, 15(C) (noting that the CBA applies to "Surgical Technologist[s]" and outlining the 8/80 option)). Since the CBA therefore "provide[s] otherwise for overtime," Defendants contend, § 608.018(3)(e) renders inapplicable Nevada's forty-hour-per-week overtime threshold.

Plaintiff anticipates this argument by declaring § 608.018(3)(e) preempted as discriminatory against unions under *McCollum v. Roberts*, 17 F.3d 1219 (9th Cir. 1994). There, the Ninth Circuit evaluated an Oregon statute that provided mandatory rest breaks for employees but excepted employees covered by a CBA. *McCollum*, 17 F.3d at 1220. The court reasoned that the Oregon statute provided benefits–mandatory rest breaks–to non-union employees as compared to union employees. Without a legitimate reason to discriminate in this fashion, Oregon "impermissibly burdened the exercise of rights protected by the [National Labor Relations Act ("NLRA[10]")]." *Id*. at 1222. Here, Plaintiff contends that § 608.018(3)(e) likewise impermissibly discriminates against union employees and is therefore preempted

---

[9] Defendants also contend that the FLSA preempts Nevada's § 608.018(2). The court's disposition of Defendants' first argument eliminates the need to consider this argument.

[10] Pub. L. No. 74-198, 49 Stat. 449, codified as amended at 29 U.S.C. §§ 151–169.

7

by the NLRA.[11]

The court finds that § 608.018(3)(e) is not preempted by the NLRA. Under a *McCullom*-style theory of preemption,[12] preemption is necessary where state law intrudes on conduct intended by Congress to be "left to be controlled by the free play of economic forces." *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140 (1976) (citations omitted). The gist of the rest-break statute at issue in *McCullom* itself was the following: unionized employees must bargain for rest breaks, but non-unionized employees get rest breaks automatically. *See* 17 F.3d at 1223. The Ninth Circuit found that this statute impermissibly burdened the collective bargaining process by discriminating between unionized and non-unionized employees. *Id*. However, where state law merely erects a set of default rules against which collective bargaining may occur, unionized employees are not disadvantaged. *See Livadas v. Bradshaw*, 512 U.S. 107, 131-32 (1994) (approving statutes in which "union-represented employees have the full protection of the [state law] standard, absent any agreement for something different"); *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1984) ("Both employers and employees come to the bargaining table with rights under state law that form a 'backdrop'

---

[11] To be clear, Plaintiff does not phrase the argument in exactly these terms. Instead, Plaintiff asserts that the *McCullom* court found the preempted statute to be "unconstitutional," and on the strength of this finding Plaintiff declares § 608.018(3)(e) "unconstitutional." (Plaintiff's Opposition to Motion to Dismiss (#38) p. 9:19-25.) However, the *McCullom* court explicitly rested its analysis on preemption doctrine–specifically, preemption by the NLRA. *McCullom*, 17 F.3d at 1223. While preemption doctrine is ultimately rooted in the Supremacy Clause of the Constitution, U.S. Const. art. VI, Plaintiff provides no indication of which statute preempts § 608.018(3)(e). The Court therefore construes Plaintiff's argument to fall along the same lines as the *McCullom* court's reasoning.

[12] As discussed in the previous note, in the absence of clearer guidance, the court construes Plaintiff's *McCullom* claim as a preemption claim following the same theory as in *McCullom* itself. There are two strands of preemption analyses under the NLRA, a "*Garmon*" strand and a "*Machinist*" strand. *See Wylie v. Foss Mar. Co.*, 2008 WL 4104304 *12 (N.D. Cal. 2008). This is a *Machinist* preemption claim, in which the state is forbidden from "imposing restrictions on labor and management's weapons of self-help that were left unregulated in the NLRA because Congress intended for tactical bargaining decisions and conduct to be controlled by the free play of economic forces." *Associated Builders & Contractors of S. California, Inc. v. Nunn*, 356 F.3d 979, 987 (9th Cir. 2004) (quotations omitted).

for their negotiations."). "Opt-out provisions for negotiated alternatives to state-law standards are not in conflict with federal preemption law . . . [where] a collective bargaining agreement [ ] contains a negotiated provision on the same subject but different from the statutory provision." *Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000).

Nevada's § 608.018(3)(e) is just such an opt-out provision. The statutory overtime scheme assures employees of overtime compensation at a certain rate while exempting "[e]mployees covered by collective bargaining agreements which provide otherwise for overtime." First, under this scheme, CBA-covered employees have the "full protection of the [state law] standard" of overtime pay when they cannot reach a different agreement with the employer. *Lividas*, 512 U.S. at 131. Moreover, Nevada's overtime guarantees are only suspended where the CBA "provides otherwise" for overtime payments–that is, when the CBA "contains a negotiated provision on the same subject but different from the statutory provision." *Firestone*, 219 F.3d at 1067. Finally, Nevada's overtime statute does not impermissibly discriminate against unionized employees because it "does not operate automatically to exempt virtually all union-represented employees from its coverage–it exempts only those who have bargained for an alternative overtime compensation scheme." *Id*. at 1068. By establishing default rules and then allowing parties to bargain around them, Nevada's overtime statute respects "the free play of economic forces," consonant with the purpose of the NLRA.[13] Since § 608.018(3)(e) is not preempted, the 8/80 option memorialized in Plaintiff's CBA is consistent with Nevada law. Therefore, Defendants' motion to dismiss Plaintiff's 8/80 claim is granted.

///

---

[13] Plaintiff also argues that Nevada's overtime statute discriminates against union employees because it is possible that a CBA will provide less compensation for overtime hours than the statute does. However, this argument assumes that Nevada's overtime statute sets up *minimum* overtime compensation requirements instead of *default* overtime compensation requirements. (With defaults, employees may agree to substandard overtime compensation in return for some benefit elsewhere.) Nevada's overtime statute excepts employees covered by CBA's that "provide otherwise" for overtime compensation–language more consistent with the default interpretation.

9

### C. The availability of waiting-time penalties

Plaintiff asks for waiting-time penalties under N.R.S. §§ 608.040 and 608.050. These statutes provide for penalties when an employer fails to pay a separated employee her due wages in a timely fashion. The key word here is "separated": section 608.040 applies to only "discharged" employees or employees who "resign[] or quit[]," and § 608.050 applies only to "discharg[ed]" or "la[id] off" employees. By her own admission, Plaintiff is still employed by Defendants.

In order to avoid this lack of standing to claim waiting-time penalties, Plaintiff maintains that she has suffered an actual or imminent injury because all employees are "inexorably separated from employment." (Plaintiff's Opposition to Motion to Dismiss (#38) p. 12:12.) While separation from employment, like death, may be inexorable, that does not make it "imminent." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an injury must be actual or imminent to give rise to standing). Since Plaintiff has not suffered the relevant injury in fact under the waiting-time statutes, Plaintiff lacks standing to claim waiting-time penalties (for herself or as a representative of the class, *see, e.g.*, *Pulido v. Coca-Cola Enterprises, Inc.*, 2006 WL 1699328 (C.D. Cal. 2006) (noting that non-separated employees do not have standing to assert claims under California's waiting-time statute)). Therefore, Defendants' motion to dismiss Plaintiff's waiting-time penalty claim is granted.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss the First Amended Complaint (#33) is GRANTED in part and DENIED in part. Defendants' motion to dismiss the state-law components of the minimum-wage, overtime, and calculation claims is denied. Defendants' motion to dismiss the 8/80 claim and the waiting-time penalty claim is granted. The dismissed claims are dismissed with prejudice.

IT IS SO ORDERED.

DATED this 18th of September, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE